WO          IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


DOUGLAS CLABAUGH,                    )
                                    )
                    Plaintiff,      )
                                    )
        vs.                         )
                                    )
COUNTY OF YUMA,                     )
                                    )       No. 2:13-cv-1061-HRH
                    Defendant.      )
_____ )

## O R D E R

### Cross-Motions for Summary Judgment

Plaintiff moves for summary judgment.[1]  This motion is opposed,[2] and defendant

cross-moves for summary judgment.[3]  Defendant's cross-motion is opposed.[4]  Oral

argument was requested and has been heard.

### Facts

Plaintiff is Douglas Clabaugh.  Defendant is Yuma County.

---

[1]Docket No. 31.

[2]Docket No. 39.

[3]Docket No. 34.

[4]Docket No. 35.

-1-

Plaintiff was employed as a deputy by the Yuma County Sheriff's Office.[5]   On October 10, 2012, plaintiff had a brief conversation with Jack Lehr, who was also employed by defendant, when plaintiff dropped his patrol vehicle off at the County Maintenance Yard for service.  The conversation concerned the upcoming election for sheriff and a debate between the candidates that had been held the night before.  During the conversation, plaintiff made reference to the "good old boy system" in the Sheriff's Office.

Lehr reported the conversation to his supervisor, Matthew Catron, via email, because he "kind of felt offended" by plaintiff's remark about "the good old boy system."[6] Lehr testified that he did not really know what plaintiff was referring to in using that term but that he thought it was inappropriate for plaintiff to use that term.[7]  In his email to Catron, Lehr stated that plaintiff

> asked if I attended the debate between Wilmot and Sandoval for Sheriff.  I told him no I did not attend it and that I did not know about [the debate] until yesterday afternoon.  Deputy Clabaugh said he would of liked to have attend[ed] the debate but had to work at night.
> I told Deputy Clabaugh that it is on the front of the paper that is lying on the other desk.  He then said that he is

---

[5]Plaintiff was employed as a deputy from 2002-2004, was then recalled to active duty in the Marine Corp, and then rejoined the Sheriff's Office as a deputy in late 2007.

[6]Deposition of Jack Lehr at 12:16-18, Exhibit 3, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.

[7]Id. at 15:14-20.  Lehr testified that he did not think it was inappropriate that plaintiff brought up the debate.  Id. at 15:21-25.

> voting for Sandoval, cause he is tired of the gold ole boy things that go on at the Department. He also said that he is not the only one that will be voting for Sandoval from here and he meets with Sandoval regularly.
>
> He then mentioned the Youtube video with Sandoval in it and said that is not a deal thing. [sic] I then told Deputy Clabaugh that I am a registered Democrat and will always vote[] for the right person and that person is not Sandoval. I told him that I have been at this Department for a long time and this Department is running smoothly and after I saw the Sandoval video, I believe him to be corrupt. After that Deputy Clabaugh's ride showed up and he said he would be in for uniforms soon and he left the Warehouse.[8]

Plaintiff testified that, contrary to what Lehr wrote, he did not use the term "good old boy system" as a means of expressing his own personal opinion about the Sheriff's Department, but rather he used the term to indicate why others were going to vote for Sandoval.[9]

On October 10, 2012, Lieutenant Darren Simmons spoke to plaintiff about his conversation with Lehr. Plaintiff contends that he "advised [Simmons] I would no longer have any conversations with Mr. Lehr" and that he "asked the Lieutenant if this would be the end of the matter" and was told that it would be.[10]

_____

[8]Exhibit 5, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.

[9]Deposition of Douglas Clabaugh at 35:13-20, Exhibit 1, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.

[10]Exhibit 11 at 1, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.

Catron had, however, forwarded Lehr's email to Captain Eben Bratcher.[11] Bratcher's response was "I'd like a list of what 'good ol boy' actions he [plaintiff] is disturbed by."[12]

On October 11, 2012, plaintiff received a phone call from Simmons who "advised that Captain Bratcher wanted a memorandum about the incident between me and Mr. Lehr.  Lieutenant Simmons also said I needed to put in the memo ... what a good ol boy system is and what I meant by it and how to correct it."[13]

Plaintiff wrote a memo dated October 14, 2012 in response.  Plaintiff wrote:

> On 10/11/12, I was advised by Lt Simmons to complete a memo in reference to a conversation that occurred on 10/10/12, between Mr. Jack Lehr and me.
> The conversation was in reference to the upcoming election.  Mr. Lehr had stated his opinion about the changes that could take effect.  I then brought up my opinion about the changes that could take place and what I have heard from other persons.
> After speaking with Lt. Simmons about the situation on 10/10/12, I was advised not to express my opinion to anyone while on duty.  I advised Lt. Simmons that I understood and there would be no further situations of this matter.
> As far as the conversation was concerned, I thought it was two adults that had a difference of opinion[] and nothing

---

[11]Exhibit 5 at 1, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.

[12]Exhibit 11 at 1, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.

[13]Id.

more.  I was not angry or upset in reference to Mr. Lehr's opinion and was glad he shared it.[14]

Plaintiff submitted the October 14 memo to Simmons on October 15, 2012, who forwarded it to Bratcher.  Bratcher determined that the memo was not sufficient and asked Simmons to have plaintiff write another memo.  Simmons relayed this request to Sergeant Voss.  Voss asked plaintiff for another memo, advising him that the one he had submitted was "not the memo that Captain Bratcher wanted due to it did not say anything about me speaking about the good ol boy system."[15]  Plaintiff said that he would write another memo but "asked if there was a way to get an email or something in writing about what to do[.]"[16]  Plaintiff contends that he was concerned that writing about the good old boy system reference could be a policy violation (making disparaging remarks about the Sheriff's Office).  Two other deputies were present in the room during Voss' conversation with plaintiff about the memo.

Voss emailed Simmons to advise him of his conversation with plaintiff.[17]  Voss wrote that plaintiff stated that he wanted the request to write a memo about the good old boy

---

[14]Exhibit 9, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.

[15]Exhibit 11 at 2, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.

[16]Id.

[17]Exhibit 7, Defendant's Separate Statement of Facts [etc.], Docket No. 33.

system in writing "and that he was going to discuss it with a lawyer and or AZCOPS."[18]

Later in the day on October 15, 2012, Simmons placed plaintiff on administrative leave and advised plaintiff that an administrative investigation (AI investigation) would be conducted.[19]

Sergeant Jason Amon conducted the AI investigation.  The three charges against plaintiff were insubordination, satisfactory performance, and public criticism.[20]  Amon interviewed plaintiff, Lehr, Voss, and Simmons.  Prior to his interview with Amon, plaintiff was advised of his rights regarding the interview[21] and was given and signed a copy of A.R.S. § 38-1101, which provides, among other things, standards or rules for interviewing law enforcement officers.[22]

---

[18]Id.  AZCOPS is the Arizona Conference for Police and Sheriffs, of which plaintiff was a member at the time of the events in question.  Declaration of Douglas Clabaugh at 1, ¶ 11, Exhibit 2, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.

[19]Exhibit 11 at 2, Plaintiff's Statement of Material Facts [etc.], Docket No. 32; Exhibits 8 & 9, Defendant's Separate Statement of Facts [etc.], Docket No. 33.   Conducting the investigation was consistent with the Sheriff's Office's disciplinary policies which provide that "[t]he Yuma County Sheriff's Office will investigate all allegations of personnel misconduct and suspected conduct."  Exhibit 19 at Clabaugh000074, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.

[20]Exhibit 1 at Yuma County 14, Defendant's Separate Statement of Facts [etc.], Docket No. 33.

[21]Exhibit 10, Defendant's Separate Statement of Facts [etc.], Docket No. 33.

[22]Exhibit 11, Defendant's Separate Statement of Facts [etc.], Docket No. 33.

During the interview, Amon asked plaintiff if he "made the comment that you thought [the Sheriff's Office] was a good ole boy system" and plaintiff replied, "No I did not.  I was referring to what I've heard."[23]  Plaintiff also explained that he asked for the order to be in writing because he thought he was being asked to violate the public criticism policy "where it says where you won't put in writ[ing] where you will slander."[24]

In Lehr's interview with Amon, Lehr stated that plaintiff said "he was voting for Sandoval and he was tired of all the good ole boy stuff going on with the Department."[25]

On October 26, 2012, Simmons advised Bratcher that he (Simmons) had reviewed the results of the AI investigation and found the charges to be sustained.[26]  Simmons found that plaintiff "failed to carry out a lawful order given by a Supervisor on not one but two occasions" and "[h]e also made comments which criticized the department and the Sheriff reference to 'good ole boy attitudes[.]'"[27]  Simmons recommended that plaintiff "receive 160 hours without pay and be placed on a two year reckoning period and receive a PPR

---

[23]Exhibit 1 at Yuma County 15, Defendant's Separate Statement of Facts [etc.], Docket No. 33.

[24]<u>Id.</u> at Yuma County 16.

[25]Exhibit 2 at Yuma County 20, Defendant's Separate Statement of Facts [etc.], Docket No. 33.

[26]Exhibit 12 at Yuma County 28, Defendant's Separate Statement of Facts [etc.], Docket No. 33.

[27]<u>Id.</u>

entry reference to the findings."[28]  Simmons "briefed" plaintiff "on the findings of th[e]

investigation on 10/26/12 and advised that the Administrative Investigation would now be

forwarded to [Bratcher] for review."[29]

On October 29, 2012, Bratcher reviewed the results of the AI investigation and wrote

a memo to the file regarding his review.[30]  Bratcher found that the three charges had been

sustained.[31]  Bratcher concluded that plaintiff

> did knowingly and intentionally engage in speech which was
> malicious and without regard for the truth.  Upon being given
> an order to document his concerns, so that I could address any
> issues, Deputy Clabaugh refused to comply with that order on
> two separate occasions.  Deputy Clabaugh has further demon-
> strated his lack of regard for his conduct by denying he had
> any complaints and was only repeating what he had heard.
> Deputy Clabaugh is further incapable or unwilling to identify
> what any of his concerns are, yet he had no difficulty in voicing
> them unsolicited to a fellow employee.[32]

---

[28]Id.

[29]Id.

[30]Plaintiff makes much of the fact that Bratcher did not personally speak to Lehr
about his conversation with plaintiff.  Deposition of Eben Bratcher at 19:8-20:2, Exhibit 4,
Plaintiff's Statement of Material Facts [etc.], Docket No. 32.

[31]Exhibit 12 at 1, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.

[32]Id.

Bratcher wrote that "[b]ased on my findings, Deputy Clabaugh's employment with the Yuma County Sheriff's Office is hereby TERMINATED."[33]

On October 30, 2012, Bratcher met with plaintiff and advised plaintiff that his recommendation was that plaintiff be terminated but that he would meet with plaintiff again on November 13, 2012.[34]   Bratcher again requested that plaintiff write a memo outlining any complaints plaintiff had with the Sheriff's Office.[35]

On November 7, 2012, plaintiff wrote a memo in response to Bratcher's October 30, 2012 request.  Plaintiff wrote that his "only complaint ... is the Administrative Investigation that I am currently under going."[36]  Plaintiff also wrote that

> [a]s far as the good ol boy definition as asked for, I found it on the internet under Wikipedia.  It can be used as a pejorative term, referring to someone who engages in cronyism (long standing friends doing favors for friends), among men who have known each other for a long period of time.

---

[33]Id.

[34]Exhibit 11 at 3, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.  This meeting was consistent with the Sheriff's Offices disciplinary policies which provided that "[t]he Bureau Commander or his/her designate will meet with the employee upon completion of the investigation."  Exhibit 19 at Clabaugh 000077, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.  Consistent with policy, Mejia-Rico attended this meeting as well because the "recommended sanction(s) involve[d] an economic loss [for] the employee."  Id.; Bratcher Deposition at 27:10-19, Exhibit 4, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.

[35]Exhibit 11 at 3, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.

[36]Exhibit 10 at 1, Plaintiff's Controverting Statement of Facts [etc.], Docket No. 36.

> As stated previously several times, I did not make this statement about the Office or any persons.  If I had an issue with an employee I would speak to them about the issue and resolve it.  This statement was said in reference to what I have heard in the past and was made in reference to negative comments that Mr. Lehr was making about the elections, like an example.   There was nothing negative meant by the example.[37]

On November 15, 2012, plaintiff was advised that Bratcher had not changed his mind and plaintiff was asked to, and did, sign the termination memo that Bratcher had drafted on October 29, 2012.[38]  Plaintiff was also given a Notice of Dismissal.[39]  The Notice provided:

> You are hereby notified that you will be dismissed from employment with this office/department effective as of the following date:
> If you do not respond to this notice by Monday, November 26th, 2012 by 1700 hours.  Termination will be effective on Tuesday, November 27th, 2012 at 0800 hours.[40]

On November 26, 2012, plaintiff requested "a hearing on [his] dismissal."[41]  Plaintiff requested that the hearing be with the Sheriff and submitted a four-page response to the

---

[37]Id. at 1-2.

[38]Exhibit 13 at Yuma County 30, Defendant's Separate Statement of Facts [etc.], Docket No. 33.

[39]Exhibit 14, Plaintiff's Statement of Facts [etc.], Docket No. 32.

[40]Id. at 1.

[41]Id. at 2.

charges against him.[42]  In his response, plaintiff explained his version of the events and

reiterated that he did "not have any complaints with anyone or any other grievances, other

than this Administrative Investigation...."[43]

On November 26, 2012, defendant notified plaintiff that the hearing would be held

on November 30, 2012.  The Hearing Notice advised plaintiff that he would have the right

to testify at the hearing and could bring witnesses to testify on his behalf.[44]  The Notice also

advised that "[i]f you have retained a representative to represent you, that representative

may be permitted to examine witnesses [the Sheriff] called to testify."[45]

Plaintiff was represented at the hearing by Julie McDonald, a local attorney.[46]

McDonald was told by Ogden and Norazel Mejia-Rico, the Human Resources Supervisor

for the Sheriff's Office, that she (McDonald) was there only as an "observer" and that she

---

[42]Exhibit 11 at 1, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.  Plaintiff could have requested a hearing before a group of his peers rather than a hearing before the Sheriff.  Exhibit 19 at Clabaugh 000079-81, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.

[43]Exhibit 11 at 4, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.

[44]Exhibit 21 at 1, Plaintiff's Statement of Facts [etc.], Docket No. 32.

[45]Id.

[46]McDonald had been asked to step in for Eric Frost, the Area President of the Yuma Deputies Association, because he was unable to attend the hearing.  McDonald believed that the hearing was to be a pre-termination hearing.

would not be allowed to speak.  McDonald was however not "constrained" from giving plaintiff advice during the hearing.[47]

Shortly before the hearing, plaintiff was provided with a copy of the AI investigation file,[48] which he had not requested until that morning after Mejia-Rico asked him if he wanted a copy of it.  At the hearing itself, plaintiff was provided a list of witnesses and copies of documents that defendant intended to use during the hearing.  Mejia-Rico testified that at that time it was typical for defendant to place a packet of information on the employee's chair or at the table that includes, among other things, "an outline of who's gonna be present, the charges, the definitions of the alleged rule violations, and any summaries of previous administrative investigations."[49]

The hearing was short, lastly approximately 20 minutes.  Amon and Bratcher appeared as witnesses and plaintiff was given an opportunity to tell his side of the story.[50] Amon testified that during the conversation with Lehr, plaintiff "made comments that was,

---

[47]Deposition of Julie McDonald at 23:12-16, Exhibit 20, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.

[48]The AI investigation file contained, among other things, transcripts of Amon's interviews and the recordings of those interviews.

[49]Deposition of Norazel Mejia-Rico at 25:7-10, 43:11-18, & 44:7-15, Exhibit 16, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.

[50]Exhibit 15 at Yuma County 58, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.

he was tired of the 'good ole boy' system at the Sheriff's Office"[51] and that an investigation ensued as a result of these comments.  During the hearing, plaintiff asked if the two deputies who had witnessed the conversation between him and Voss had been interviewed.[52]  Amon replied that "nobody is debating the fact that you stated you would write a memo ... [s]o talking to them is regardless."[53]  Plaintiff was asked if he wanted to call Lehr, Simmons, and/or Voss as witnesses so that plaintiff could question them, but plaintiff stated that "I don't need them."[54]

At the close of the hearing, Ogden asked Mejia-Rico if "we followed the policy for the Yuma County Sheriff's Office as far as this hearing goes or as far as this investigation goes?"[55]  Mejia-Rico replied, "Yes, Sir."[56]  The same question was posed to Felicia Medina,

---

[51]Id. at Yuma County 56.  Plaintiff repeatedly mentions that this statement by Amon during the hearing conflicts with Amon's testimony during his deposition.  At his deposition, Amon testified that he was unable to determine whether the "good old boy system" remark was made in reference to plaintiff's own personal belief or whether it was based on what others believed.  Deposition of Sergeant Jason Amon at 31:12-17, Exhibit 6, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.

[52]Exhibit 15 at Yuma County 63, Plaintiff's Statement of Facts [etc.], Docket No. 32.

[53]Id.

[54]Id. at Yuma County 62.

[55]Id. at Yuma County 64.

[56]Id.

defendant's Director of Human Resources, and she gave the same reply.[57]  However, Mejia-Rico has since admitted that defendant did not comply with A.R.S. § 38-1101 when conducting plaintiff's hearing.[58]

Subsection (A)(3) of A.R.S. § 38-1101 provides that

> [a]fter an employer completes an investigation of a law enforcement officer or probation officer if the employer seeks disciplinary action at the request of the law enforcement officer or probation officer, the employer shall provide a basic summary of any discipline ordered against any other law enforcement officer or probation officer of generally similar rank and experience employed by the employer within the previous two years for the same or a similar violation.

Mejia-Rico testified that defendant would have provided plaintiff with the summary contemplated in Subsection (A)(3) if he had requested it, but that he never requested the summary so one was never provided.[59]

Subsection E of A.R.S. § 38-1101 sets forth specific requirements for an "appeal of a disciplinary action by a law enforcement officer or probation officer[.]"  In any such appeal,

---

[57]Id.

[58]Mejia-Rico Deposition at 58:22-24, Exhibit 16, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.

[59]Id. at 40:10-23.

the parties shall exchange copies of all relevant documents and a list of all witnesses pursuant to the following time periods and requirements:

1. Within three business days after the employer's receipt of a written request from the law enforcement officer or probation officer for a copy of the investigative file that is accompanied by a copy of the filed notice of appeal, the employer shall provide a complete copy of the investigative file as well as the names and home or work mailing addresses of all persons interviewed during the course of the investigation.

2. No later than ten business days before the appeal hearing, the parties shall produce and serve on every party the following information:

(a) The name of each witness whom the disclosing party expects to call at the appeal hearing, with a designation of the subject matter of which each witness might be called to testify....

(b) The name and contact information of each person who has given statements, whether written or recorded, signed or unsigned, regarding matters relevant to the notice of discipline and the custodian of the copies of those statements.

(c) The copies of any documents that may be introduced at the hearing and that have not previously been disclosed.

It is undisputed that defendant did not provide plaintiff the names of witnesses with a designation of the subject matter of their testimony at least ten days prior to the hearing. It is also undisputed that defendant did not provide plaintiff the names and contact information of anyone who had given a statement regarding the matter at least ten days prior to the hearing. It is also undisputed that defendant did not provide plaintiff with

copies of any documents that might be introduced at the hearing at least ten days prior to the hearing.[60]

On December 7, 2012, Ogden issued his final decision sustaining "the recommended sanctions and order[ing] that Deputy Clabaugh be terminated from employment by the Yuma County Sheriff's Office effective at 1600 hours on December 7, 2012."[61] Ogden found that plaintiff's "memos were non-responsive to the information he was instructed to provide and his refusal to write the memo without a written order ... did in fact violate the Policy regarding Insubordination and Satisfactory Performance."[62]

On December 17, 2012, plaintiff submitted a "formal written notice of appeal" of the December 7 decision to terminate him.[63] Plaintiff submitted a second formal written notice of appeal on February 13, 2013.[64]

---

[60]It is also undisputed that defendant's policies that were in place at the time of plaintiff's hearing made no reference to these statutory disclosure requirements.

[61]Exhibit 23 at Yuma County 54, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.

[62]Id.

[63]Exhibit 24 at 1, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.

[64]Exhibit 25 at 1, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.

On March 11, 2013, Leon Wilmot, the recently elected Sheriff, requested that Sheriff J. Adam Shepherd of Gila County review the decision to terminate plaintiff.[65]  Shepherd was provided a copy of the AI file and a transcript of the November 30, 2012 hearing.[66] Shepherd found that the charges were supported and concluded that Ogden "was well within his right to make [the] decision" to terminate plaintiff.[67]

On May 24, 2013, plaintiff commenced this action in which he asserts a § 1983 Fourteenth Amendment due process claim based on allegations that he was not provided a meaningful hearing because Ogden was not an impartial hearing officer and because defendant did not comply with A.R.S. § 38-1101.[68]

Both parties now move for summary judgment on plaintiff's claim.

<u>Discussion</u>

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The initial burden is on the moving party to show that there is an absence of genuine issues of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  If the moving party meets

---

[65]Exhibit 31, Defendant's Separate Statement of Facts [etc.], Docket No. 33.

[66]<u>Id.</u> at 1.

[67]Exhibit 32 at Yuma County 82, Defendant's Separate Statement of Facts [etc.], Docket No. 33.

[68]Complaint at 5, ¶¶ 36-37, Docket No. 1.

its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor.  Id. at 255.  "[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence."  T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).  "Where the parties file cross-motions for summary judgment, the court must consider each party's evidence, regardless under which motion the evidence is offered."  Las Vegas Sands, LLC v. Nehme, 632 F.3d 526, 532 (9th Cir. 2011).

As an initial matter, defendant argues that it is entitled to summary judgment because plaintiff's § 1983 claim is based on a respondeat superior theory of liability and "there is no respondeat superior liability under § 1983."  Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009).  A local government body, such as defendant, "cannot be held liable under § 1983 'solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.'"  Jackson v. Barnes, 749 F.3d 755, 762 (9th Cir. 2014) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)).

-18-

> Local governing bodies <u>can</u> be held liable, however, where "the
> action that is alleged to be unconstitutional implements or
> executes a policy statement, ordinance, regulation, or decision
> officially adopted and promulgated by that body's officers," or
> where the action is made "pursuant to governmental 'custom'
> even though such a custom has not received formal approval
> through the body's official decisionmaking channels."

<u>Id.</u> at 762-763 (quoting <u>Monell</u>, 436 U.S. at 690–91). "Under <u>Monell</u>, a local government body can be held liable under § 1983 for policies of inaction as well as policies of action." <u>Id.</u> at 763. "A policy of action is one in which the government body itself violates someone's constitutional rights, or instructs its employees to do so; a policy of inaction is based on a government body's 'failure to implement procedural safeguards to prevent constitutional violations.'" <u>Id.</u> (quoting <u>Tsao v. Desert Palace, Inc.</u>, 698 F.3d 1128, 1143 (9th Cir. 2012)).

Defendant argues that plaintiff's § 1983 claim is based on a policy of inaction because plaintiff is alleging that defendant's policy regarding disciplinary hearings failed to incorporate the procedural safeguards that were embodied in A.R.S. § 38-1101. "In inaction cases, the plaintiff must show, first, 'that [the] policy amounts to deliberate indifference to the plaintiff's constitutional right.'" <u>Id.</u> (quoting <u>Tsao</u>, 698 F.3d at 1143). "This requires showing that the defendant 'was on actual or constructive notice that its omission would likely result in a constitutional violation.'" <u>Id.</u> (quoting <u>Tsao</u>, 698 F.3d at 1145). "Second, the plaintiff must show 'that the policy caused the violation in the sense that the

municipality could have prevented the violation with an appropriate policy.'" Id. (quoting Tsao, 698 F.3d at 1143).

Defendant argues that plaintiff cannot show that defendant was deliberately indifferent because it was not "obvious" that the failure to disclose documents and names of witnesses ten days prior to plaintiff's hearing would violate plaintiff's constitutional rights.  Defendant argues that plaintiff already knew who the likely witnesses would be and that plaintiff or his counsel could have requested a continuance if they believed that additional time was needed.   Thus, defendant insists that plaintiff's claim against it is nothing more than a claim for respondeat superior liability and that such a claim is barred.

Plaintiff's § 1983 claim is not barred.  Defendant may be liable here because the alleged deprivation of plaintiff's constitution rights was based on defendant's existing policies.  Both Mejia-Rico and Medina confirmed during the November 30 hearing that the hearing complied with defendant's then-existing policies and Ogden testified that plaintiff's hearing complied with defendant's then-existing policies.[69]  It was defendant's "policy or custom" that has allegedly "caused [the] violation of [plaintiff's] constitutional rights."  Assoc. for Los Angeles Deputy Sheriffs v. County of Los Angeles, 648 F.3d 986, 993 (9th Cir. 2011).  This is not a case in which defendant has failed to adopt any policies, but rather a case in which the policies that it has adopted were "the 'moving force' behind the

---

[69]Ogden Deposition at 40:13-24, Exhibit 8, Plaintiff's Converting Statement of Facts [etc.], Docket No. 36.

alleged constitutional violation." <u>Jadwin v. County of Kern</u>, Case No. 1:07–CV–00026–OWW-DLB, 2009 WL 2424565, at *15 (E.D. Cal. Aug. 6, 2009) (quoting <u>Galen v. County of Los Angeles</u>, 477 F.3d 652, 667 (9th Cir. 2007)).

Turning then to the merits of plaintiff's § 1983 claim, "[t]he Fourteenth Amendment protects individuals against the deprivation of liberty or property by the government without due process." <u>Portman v. County of Santa Clara</u>, 995 F.2d 898, 904 (9th Cir. 1993). "A section 1983 claim based upon procedural due process thus has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." <u>Id.</u>  Here, there is no dispute that plaintiff had a protected property interest in his employment and that he was deprived of that interest when he was terminated.  Rather, the focus of the dispute between the parties is on whether there was a lack of process.

"'Constitutional due process requires that a party affected by government action be given the opportunity to be heard at a meaningful time and in a meaningful manner.'" <u>Miranda v. City of Cornelius</u>, 429 F.3d 858, 866 (9th Cir. 2005) (quoting <u>Calif. ex rel. Lockyer v. F.E.R.C.</u>, 329 F.3d 700, 708 n.6 (9th Cir. 2003)).

> In determining what process is due, [the court] appl[ies] the factors specified by the Supreme Court in <u>Mathews v. Eldridge</u>:
>
> > First, the private interest that will be affected by the official action; second, the risk of an errone-

> ous deprivation of such interest through the
> procedures used, and the probable value, if any,
> of additional or substitute procedural safe-
> guards; and finally, the Government's interest,
> including the function involved and the fiscal
> and administrative burdens that the additional
> or substitute procedural requirement would
> entail.

Id. (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).   What process is due is a question of law.  Quick v. Jones, 754 F.2d 1521, 1523 (9th Cir. 1984).

Although the parties do not discuss the Mathews factors, plaintiff had a strong interest in maintaining his employment, an interest that was affected by defendant's policies.  And, defendant had a strong interest in making sure that issues such as insubordination within the Sheriff's Office were dealt with in a prompt manner.  The factor that requires attention here is whether the procedures that defendant used "present[ed] a meaningful risk of an erroneous deprivation of [plaintiff']s interest."  Bradford v. Union Pacific R. Co., 767 F.3d 865, 871 (9th Cir. 2014).

Plaintiff contends that defendant's procedures in connection with the November 30 hearing were insufficient to protect against an erroneous deprivation of plaintiff's property interest in his employment.  The determination of whether the process plaintiff was provided was sufficient hinges on whether the November 30 hearing was pre-termination hearing or a post-termination hearing.  Plaintiff argues in his briefing on the instant

motions that the November 30  hearing was a pre-termination hearing.[70]  This argument is based on Ogden's testimony that Bratcher made a "recommendation" to terminate plaintiff but that plaintiff "wasn't terminated until about a week after — the hearing."[71]  Thus, plaintiff argues that the November 30 hearing was his pre-termination hearing, not his post-termination hearing.

The November 30 hearing was a post-termination hearing, not a pre-termination hearing.  First, all of the evidence suggests that the November 30 hearing was a post-termination hearing.  The Notice of Dismissal that plaintiff was given on November 15, 2012 stated that plaintiff would be dismissed on November 27, 2012 unless he responded to the notice[72] and that if he did not request a hearing within five days, his dismissal would be "final on the date the disciplinary order is filed with the clerk of the Board of Supervisors."[73]  Plaintiff signed a copy of Bratcher's memo to the file on November 15, 2012, which stated that plaintiff's "employment with the Yuma County Sheriff's Office is

---

[70]This is contrary to what plaintiff alleged in his complaint.  In his complaint, plaintiff alleges that the November 30 hearing was a post-termination hearing.  Complaint at 5, ¶ 36, Docket No. 1.

[71]Ogden Deposition at 13:17-24, Exhibit 8, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.

[72]Exhibit 14 at 1, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.

[73]Id. at 2.

hereby TERMINATED."[74]  Defendant's disciplinary policies provide that "[t]he hearing with the Sheriff is the concluding step in the disciplinary process and shall  include a review of all investigative and administrative procedures occurring prior to the hearing to ensure due process was afforded the employee."[75]  In the 4-page memo that plaintiff submitted in connection with his request for the hearing before Ogden, plaintiff wrote that "[o]n 11/15/12 at about 1500 hours, Lieutenant Oberosler called me in and said Captain Bratcher was still out of town and his decision was still termination.  I was provided with the termination paperwork and advised how to appeal."[76]  And, plaintiff himself testified that at the time of the hearing, he "assumed" that he was going to be terminated unless Ogden decided not to follow Bratcher's recommendation.[77]  Second, the fact that Ogden was the final decision maker does not mean that the November 30 hearing was not a post-termination hearing.  In order for the hearing to be meaningful, Ogden had to have the authority to make the final decision.  Finally, it is worth noting that much of plaintiff's argument is based on his contention that he did not receive the disclosures required by

---

[74]Exhibit 12 at 1, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.

[75]Exhibit 19 at Clabaugh000082, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.

[76]Exhibit 11 at 3, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.

[77]Clabaugh Deposition at 84:1-10, Exhibit 3, Defendant's Separate Statement of Facts [etc.], Docket No. 33.

A.R.S. § 38-1101 within the timeframes set forth in that statute.   Section 38-1101(E) sets

forth the procedures to be followed "[i]n any appeal of a disciplinary action by a law

enforcement officer or probation officer[.]"  A.R.S. § 38-1101(E) (emphasis added).  If the

November 30 hearing were a pre-termination proceeding, as plaintiff now argues,

defendant would not have had any reason to comply with A.R.S. § 38-1101(E).

Turning then to the adequacy of the post-termination procedures that were

provided to plaintiff, in his opening brief, plaintiff argued that his procedural due process

rights were violated because defendant did not comply with A.R.S. § 38-1101.  Plaintiff

complained that defendant 1)  failed to provide him with the names of witnesses and the

subject matter of their expected testimony at least ten days prior to the November 30

hearing, 2) failed to provide to him with the name and contact information of each person

who gave a statement regarding the incident at least ten days prior to the November 30

hearing, and 3) failed to provide to him copies of documents that might be used as evidence

at the hearing at least ten days prior to the hearing.  However, after defendant pointed out

that there is no per se violation of the 14th Amendment Due Process Clause simply because

a state statutory procedure is not followed, Martin v. City of Glasgow, Ky., 882 F. Supp. 2d

903, 910 (W.D. Ky. 2012), plaintiff abandoned this argument, instead arguing that

defendant's failure to comply with A.R.S. § 38-1101 was  only one factor to consider when

determining whether his due process rights were violated.[78]  Plaintiff insists that when the

totality of circumstances of considered here, the procedures that defendant provided were

not adequate.

The totality of the circumstances here, according to plaintiff are that 1) defendant did

not timely make the disclosures required by A.R.S. § 38-1101, 2) defendant gave him only

three days notice of the November 30 hearing,[79] 3) the hearing only lasted about 20

minutes,  4) his counsel was not allowed to speak at the hearing, and 5) the hearing was

conducted by Ogden, rather than an independent hearing officer, such as a sheriff from a

different county.  Plaintiff insists that under these circumstances it is clear that he was not

afforded sufficient due process in connection with the November 30 hearing.

While it is undisputed that defendant did not provide disclosures within the

timeframes provided in A.R.S. § 38-1101, plaintiff had multiple opportunities to raise any

---

[78]Defendant's argument that plaintiff waived his right to object to any procedural irregularities in connection with A.R.S. § 38-1101 is unavailing.  "A waiver of a constitutional right is 'not to be implied and is not lightly to be found.'"  Ostlund v. Bobb, 825 F.2d 1371, 1373 (9th Cir. 1987) (quoting United States v. Provencio, 554 F.2d 361, 363 (9th Cir. 1977)).  It is not reasonable to infer that plaintiff was waiving his right to the procedures set out in A.R.S. § 38-1101 simply because neither plaintiff nor his lawyer objected to the untimely disclosures on the day of his hearing.

[79]At her deposition, plaintiff's counsel asked Mejia-Rico, in reference to the Hearing Notice that plaintiff was given, whether it was typical for defendant to give 2 1/2 to 3 days notice of a "post-termination" hearing.  Mejia-Rico Deposition at 23:14-24:1, Exhibit 16, Plaintiff's Controverting Statement of Facts [etc.], Docket No. 36. Mejia-Rico replied, "Yes." Id. at 24:3.

issues concerning the timely disclosure of evidence and witness lists.  Plaintiff could have requested a continuance or plaintiff could have submitted additional information after the hearing but before Ogden made his decision.  Moreover, plaintiff knew who the witnesses were even though there had been no formal disclosure.  Plaintiff was provided a copy of Bratcher's memo, which identified witnesses and the subject matter of their testimony, by at least November 15.  As for plaintiff's contention that he did not get a summary of discipline concerning other employees as required by A.R.S. § 38-1101, the statute only requires that such a summary be provided if the employee requests it and plaintiff never requested that a summary be provided to him.

As for the short notice, plaintiff implies that this gave him inadequate time to prepare for the hearing.  But, plaintiff knew by November 15 that he was facing termination so he could have begun preparing for the hearing then.  And again, if plaintiff believed he had inadequate time to prepare, he could have requested that the hearing be continued.  To the extent that plaintiff is arguing that the short notice did not give his lawyer adequate time to prepare, the fact that McDonald began representing plaintiff the morning of the hearing was not due to the short notice.  Rather, the evidence in the record indicates that plaintiff had intended to have a union representative come to the hearing with him but that McDonald stepped in at the last moment because the union rep was not going to be available.

As for the length of the hearing, plaintiff points to no requirement that a hearing must be of a certain length in order to comport with due process, and the length of the hearing in this case does not indicate that it was not a meaningful hearing.  Two witnesses were called; plaintiff was give two opportunities to give his side of the story; and plaintiff was asked if he wanted to call Lehr, Simmons, and/or Voss as witnesses so that plaintiff could question them.  To the extent that plaintiff is arguing that his hearing was not meaningful because the two deputies who had overheard the conversation between him and Voss were not called as witnesses, during the hearing, plaintiff did not request that these individuals be called as witnesses.  Rather, plaintiff asked if the two deputies had been interviewed.[80]  Moreover, plaintiff could have called the two deputies as witnesses if he believed they had critical information.  The Hearing Notice advised plaintiff that he could call witnesses at the hearing.

As for Ogden being the hearing officer, "[d]ue process can permit the same administrative body to investigate and adjudicate a case[,]" if "different persons perform[] the investigative and decisionmaking functions." Walker v. City of Berkeley, 951 F.2d 182, 185 (9th Cir. 1991).  Because Ogden played no part in the investigation, Ogden was not precluded from acting as the hearing officer at plaintiff's hearing.

---

[80]Exhibit 15 at Yuma County 62-63, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.

As for McDonald being told she was there only as an observer, McDonald could have requested permission to cross-examine the witnesses at the hearing.  The Notice of Disciplinary Hearing that plaintiff was given expressly advised that "[i]f you have retained a representative to represent you, that representative may be permitted to examine witnesses [the Sheriff] called to testify."[81]  If McDonald failed to request permission because she was confused as to whether the hearing was a post-termination hearing or a pre-termination hearing, that confusion was due to plaintiff retaining McDonald at the last minute and not because of anything defendant did or did not do.

In sum, the post-termination hearing that plaintiff was provided was constitutionally adequate.  "'At a minimum, [a meaningful post-termination hearing] requires that the discharged employee be permitted to attend the hearing, to have the assistance of counsel, to call witnesses and produce evidence on his own behalf, and to know and have an opportunity to challenge the evidence against him.'"  Baker v. City of SeaTac, 994 F. Supp. 2d 1148, 1166 (W.D. Wash. 2014) (quoting Carter v. Western Reserve Psychiatric Habilitation Ctr., 767 F.2d 270, 273 (6th Cir. 1985)).  Here, plaintiff had counsel present at the hearing; he was given an opportunity to tell his side of the story at the hearing; he had the ability to call witness; and he knew what the evidence was against him and had an opportunity to challenge that evidence.  In addition, defendant had a Sheriff from another

---

[81]Exhibit 21, Plaintiff's Statement of Material Facts [etc.], Docket No. 32.

county review the decision to termination plaintiff.  While plaintiff was not given an opportunity to participate in this independent review, it nonetheless provided an additional safeguard against an erroneous deprivation of plaintiff's property interest in his continued employment.

<u>Conclusion</u>

Based on the foregoing, plaintiff's motion for summary judgment[82] is denied and defendant's motion for summary judgment[83] is granted.  The clerk of court shall enter judgment dismissing plaintiff's complaint with prejudice.

DATED at Anchorage, Alaska, this 20th day of November, 2014.

/s/ H. Russel Holland
United States District Judge

---

[82]Docket No. 31.

[83]Docket No. 34.